BOSTICK *vs* PURDY et al.

1. Under the word "*museum*" as contained in the sixth section of the act of 1827, "to raise a revenue for the support of government," &c. is comprehended an exhibition of living animals.

2. The owners of such exhibitions are, therefore, subject to the payment of the penalty imposed by that section, for failure to take out the license authorised therein.

Error to the Circuit Court of Pickens County.

This was a *qui tam* action, commenced by the plaintiff in error, who was the clerk of the County Court of Pickens County, in the County Court of that County, to recover of and from the defendants, the penalty imposed by law, for exhibiting a museum without license.

The declaration complained of the defendants, that they render unto the said Bostick, the sum of two hundred dollars which they owed and unjustly detained. The sum of one hundred dollars, of the said two hundred dollars, being for the use of the State of Alabama, and the other sum of one hundred dollars, for the use of himself, the said plaintiff—for that, after the passing of an act of the General Assembly of the said State of Alabama, entitled an act to raise a revenue for the support of government, until otherwise altered by law; passed at the eighth annual session of the said general assembly of the said State of Alabama, and approved by the governor of the said State of Alabama, on the tenth day

5 s & p.            14.

of January, Anno Domini, one thousand eight hundred and twenty-seven; and before the commencement of this suit, to wit, on the ninth day of November, in the year of our Lord, one thousand eight hundred and twenty-nine; to wit, at the house and dwelling of one Thomas Bradford, in the County of Pickens, aforesaid, the said defendants did exhibit, for hire, fees and emoluments, *a museum of living animals*, without having obtained from the clerk of the County Court of the said County of Pickens, a license, authorising the same, according to the requisition of the said act of the general assembly of the State of Alabama, aforesaid; and contrary to the form of the statute in such case made and provided: whereby, and by force of the said statute, the said defendants then and there forfeited the said sum of two hundred dollars, to wit, the sum of one hundred dollars to, and for the use of the said State of Alabama, and the sum of one hundred dollars to and for the use of the said plaintiff: and thereby, by force of the statute, an action had accrued to the said plaintiff aforesaid, to demand and have, of and from the said defendants, the said sum of two hundred dollars, so forfeited as aforesaid. Yet, though often requested, &c.

The case having been transferred to the Circuit Court of Pickens, the defendants filed a demurrer to the declaration, which was sustained. And the plaintiff took a writ of error.

*Pickens*, for the plaintiff in error. The construction of the word *"museum,"* is the single question upon which the case turns. In the Encyclopediæ Ame-

ricanæ, (vol. 9, tit. *Museum*,) the definition is given the word, of *every exhibition of nature or art*. This is a good authority, containing more enlarged decription. Rees traces the history of museums, and shows that the first was of "books," at Alexandria; and that subsequently there were apartments for living animals. The word itself is derived from the Greek word, *musa*—from mythology *muse;* and, in Latin, means *study*—a place where persons resort for study and learning. One later definition is, a place for *amusement*. The whole idea is *amusement and instruction* combined. Thus, a collection of paintings is a museum, and a collection of animals under any definition, would be considered a *museum*, for the curious or learned : it would be, in fact, nothing more than a collection of objects of curiosity and variety, worthy of particular attention.

All the statutes use this word : and in 1826, we find an appropriation, expressly to one, for having prosecuted a case like the one at bar—using the term, *museum of living animals*.

*Gordon*, contra. In this case, wild beasts were alone exhibited; and a collection of living animals can not be considered within the mischief intended to be remedied by the statute. The word *"museum"* has generally a more enlarged sense. Museums, in Philadelphia, New York, &c., surely cannot be taxed. Suppose a collection here of objects of science : ornithology, botany, chemistry, geology, &c., would they be within the statute, and the subject of taxation? If you include, in the general term "museum," every exhibition, they would. But, consider the mischief in-

tended to be remedied: was it to prohibit all collections in science and the arts ?—to prevent all increase in knowledge ? Surely not. The interest of the State is to advance these matters; and natural history is one of the branches of science. Matters within the statute, and the mischief, are clearly such as promote idleness—rope-dancers, learned goats, pigs and dogs. These encourge idle assemblies, and disturb people in their usual occupations, without producing a corresponding benefit. But the exhibition here, is essentially different—it is a collection of rare living animals, procured after great labor and expense; and the only term ever given to such an exhibition, is that of " *menagerie.*"

TAYLOR, J.—This is a *qui tam* action, brought by the plaintiff in error, against the defendants, under the sixth section of the act passed in January, 1827, entitled an " act to raise a revenue for the support of government, until otherwise altered by law."

The sixth section is as follows : " That every person who shall exhibit or cause to be exhibited, for hire or emolument, any museum, wax-works, feats of activity, slight of hand or plays, shall first obtain from the clerk of the County Court of the County where the same may be exhibited, a license, authorising the same; for which the party applying shall pay to the clerk, twenty dollars, for the use of the State, together with one dollar, as a fee to the clerk, for issuing the same : and any person who shall exhibit as aforesaid, without first obtaining such license, shall forfeit and pay the sum of two hundred dollars, to be recovered," &c.

BOSTICK *vs* PURDY et al.

The declaration charges, that " the said Evenhart Purdy, James Wright and Ira Olmstead, did exhibit, at the house and dwelling of the said Thomas Bradford, at the County aforesaid, for hire, fees and emolument, a *museum of living animals,* without having obtained a license." &c.

To this declaration there was a demurrer, which was sustained; and the question submitted for our determination, is, can a " museum," within the meaning of the statute, be constituted of " living animals" ?

The philological discussion, which has been produced by this question, was both amusing and interesting ; and I feel much indebted to the counsel, for the light which their researches have thrown upon the subject.

By tracing the Greek word, from which " museum" is derived, to its root, it is found to signify *amusement,* or to *amuse:* and thus, the term " museum," would appear to embrace not only collections, of curiosities, for the entertainment of the sight, but also such as would interest, amuse and instruct the mind. Accordingly the first museum of which we read, was the celebrated library of Alexandria in Egypt.—— This establishment was afterwards extended, so as to embrace many things, besides books; but, in the beginning, they constituted its sole, as they always did its richest, treasure.

Rees, in his Encyclopedia, informs us of a museum at Paris, exclusively dedicated to natural history, called the "*Museum d' Historie Naturelle,*" also known by the name of "*Jardin des Plantes,*" which was instituted in 1663. The national assembly, by a de-

cree, passed in 1793, changed the name of this insti-
tution, to that of "*Museum National d'Historie Natu-
relle.*"

"The upper story of the building," says Dr. Rees,
" is set apart for zoology.   Here we find not only the
systematic and trivial names affixed to all the spe-
cies, but also tickets, descriptive of the families and
orders into which the animals are distributed."   He
also informs us that the great saloon, adjoining the
mammalia room, contains the remaining animals, all
of them systematically arranged, and ticketted in the
same manner as the mammalia.   The number of
birds, he says, is very considerable.   The amphibi-
ous animals are classed after Lacepede's system, as
are the fishes, &c.   The menagerie of this museum
is also said to be in a good state, and very rich in
scarce and curious animals.

It thus appears, that "living animals may form
a part of a museum, but can there be a museum, con-
sisting of nothing else?

Were we to be informed that a collection had been
made with great care, by some zoologist, of all the
animalcula, small birds and small animals, known to
natural history, we should at once fix the name and
idea of a museum to this collection; and, from the
pleadings, we are not informed, but that such was
the collection, for the exhibition of which this suit
was brought.   The presumption is, it is true, that
this was what is termed a menagerie of large foreign
animals; but, does the circumstance, that one appel-
lation is usually given to this kind of collection, pre-
vent its being embraced in another.   The word
"*museum*" is a comprehensive term, and may em-

brace within it a menagerie, as well as many other things; and such is the fact, as respects the museum of Paris above noticed.

If we say that a collection of large animals can not constitute a museum, what is to be the line of demarkation between the large and small?

From the view which I have taken of the subject, I conclude that a museum, in the correct and proper meaning of the word, may be composed of "living animals" only, whether they be large or small, or a mixture of both.

Let us now examine whether the general assembly intended to embrace a collection of this kind within the meaning of the statute.

I do not understand the intention, in passing the law, to have been the suppression of all those exhibitions upon which a tax is imposed. The small amount of the tax forbids this idea. The object appears to have been simply the improvement of the revenue, by a moderate imposition upon persons who often make large sums of money, by this kind of exhibitions, among our citizens.

There is nothing peculiarly deleterious to morals in the exhibitions which are particularly specified in the act, and it was well known, when the statute was passed, that the exhibition of living animals was as frequent, and probably more so, than of wax-work, feats of activity, &c. Why should those who carry about these animals, be exempt from taxation, who probably profit as much by their employment as any of the others, and those who exhibit wax figures, the making of which is certainly a work of ingenuity and art, be subject to it? I can see no good reason

for the distinction, myself, nor can I think the legislature intended to make any.

In addition to the reasons which thus present themselves, to induce us to believe that the act does include a collection of "living animals," we have a plain expression of the opinion of the body who passed it, in a private act, passed at the same session at which the law was enacted, under which this suit was brought. It is entitled "an act to compensate Reuben Chapman, for certain services therein mentioned." It recites, that "whereas a *qui tam* action was instituted, in the County of Morgan, against a certain Eleazer Baldwin, for having exhibited a museum of *living animals*, without having obtained a license, authorising such exhibition; and whereas, also, through the instrumentality of Reuben Chapman, (attorney at law,) who managed and conducted said suit for the State, a judgment was had and obtained against the said Eleazer Baldwin, for the sum of two hundred dollars, one half of which sum has been paid into the treasury of the State." The act then proceeds to make an allowance of twenty-five dollars to Mr. Chapman, for his services.

Here is a plain declaration by the general assembly, that they did intend to include a collection of living animals, within the term "museum."

We certainly would not be authorised to resort to a distinct act, particularly a private one, to ascertain the meaning of the legislature, when the statute under consideration, imported, within itself, a different meaning. But, when it is insisted, that a term is intended to be understood in a restricted, instead of the

enlarged meaning which properly and correctly belongs to it, I feel justified in resorting to any other law, passed by the same body, in which the word is used, in a manner calculated plainly to show in what sense it was understood by those who used it.

The judgment is reversed, and the cause remanded, that the defendants may have the privilege of withdrawing their demurrer, and pleading to the declaration, if they choose to do so.